# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Nathel Harris,

                    Plaintiff,

                                Civ. No. 07-1191 (RHK/JSM)

                                **MEMORANDUM OPINION AND
ORDER**

v.

Wal-Mart Stores, Inc.,

                    Defendant.

---

Ruth Y. Ostrom, Greenman & Ostrom, Minneapolis, Minnesota, Michael L. Lander, Michael L. Lander, P.A., Minneapolis, Minnesota, for Plaintiff.

David A. Davenport, Holly A. Stocker, Winthrop & Weinstine, P.A., Minneapolis, Minnesota, for Defendant.

---

In this action, Plaintiff Nathel Harris has sued his former employer, Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), alleging that Wal-Mart's termination of his employment violated the Minnesota Drug and Alcohol Testing in the Workplace Act (the "DATWA"). Harris also alleges that Wal-Mart terminated his employment in retaliation for filing a workers' compensation claim. Wal-Mart now moves for summary judgment. For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

## BACKGROUND

The facts recited herein are undisputed, except where noted. Harris worked as an overnight stocker in Wal-Mart's Apple Valley, Minnesota store beginning in November

2003.  According to Harris, on January 25, 2006, he sustained a back injury while working.

(Harris Decl. ¶ 3.)[1]  He claims that he immediately reported his injury to his supervisor,

Jim Johnson, and reported it again to his store manager, Deborah McNulty, at the end of his

shift the following morning.  (Id.)  Neither Harris nor Wal-Mart, however, filled out any

paperwork concerning his injury at that time.  (See Stocker Aff. Exs. P, Q; Lander Decl. Ex.

2.)

Harris continued working at Wal-Mart until February 3, 2006, when he requested a

leave of absence due to depression.  Wal-Mart granted Harris's request.  On March 10,

2006, while Harris was on leave, he slipped and fell while showering and fractured his jaw.

As a result, his jaw was wired shut for several weeks.

On March 26, 2006, Harris and his mother appeared at the Apple Valley store and

asserted that Harris was entitled to workers' compensation for his January 25, 2006, injury.

(Stocker Aff. Ex. P; Lander Decl. Ex. 2.)  They met with Kara Rausch, the assistant store

manager, and the three together filled out a workers' compensation claim form for Harris.

(Stocker Aff. Ex. Q; Lander Decl. Ex. 3.)  Harris filled in the following information on the

form:

When Did You Report Your Injury   __Debra__    To whom _____

_____

[1] Harris and his attorney have each submitted a Declaration (not an affidavit sworn before a notary public) in opposition to Wal-Mart's Motion, but neither was made under penalty of perjury. See Bleavins v. United States, 807 F. Supp. 487, 489 (C.D. Ill. 1992) (declaration has same evidentiary value as affidavit only if "it is signed under penalty of perjury"); 28 U.S.C. § 1746.  Because Wal-Mart has not objected to the Declarations on this ground, however, the Court will consider them when resolving the instant Motion.  See Cody v. Hillard, 139 F.3d 1197, 1199 n.1 (8th Cir. 1998).

If Not Reported Immediately, Why Not   <u>She would do it</u>

(Lander Decl. Ex. 3.)[2]

After filling out the paperwork, Rausch informed Harris that, pursuant to Wal-Mart

policy, he was required to undergo a drug test and he would have to be accompanied to the

test site by Neil Black, another Wal-Mart manager.  Harris agreed.  He, his mother, and

Black then traveled to Apple Valley Medical Center, a 24-hour medical clinic near the

store.  Upon arriving at the clinic, however, Harris vomited and appeared to be in pain.  His

mother then insisted that he be seen by a doctor before a urine sample could be collected

for the drug test.  Ultimately, Harris was unable to provide a urine sample because he was

too dehydrated, due to his jaw being wired shut.  Black then "withdrew" his request for a

urine sample and left the clinic; he did not advise Harris that he needed to follow-up with

store management to schedule another drug test.  (Harris Dep. Tr. at 50.)  Harris received

intravenous fluids at the clinic and returned home later that day.

In the subsequent days, Wal-Mart allegedly attempted to contact Harris to

reschedule his drug test, but the extent of its efforts is in some dispute.  Wal-Mart claims

that it telephoned Harris several times but was unable to reach him, and then sent him a

letter on March 29, 2006, by certified and regular mail, advising him that he needed to

immediately contact the store to reschedule the drug test.  (Stocker Aff. Ex. R; Stocker

---

[2] "Debra" apparently refers to McNulty.

Supp. Aff. Exs. A-B; Lander Decl. Ex. 10.)[3]  The post office returned the certified letter to

Wal-Mart on March 31, 2006, as "attempted – unknown."  (Stocker Aff. Ex. R.)  Although

Harris nowhere argues that Wal-Mart had an incorrect address or telephone number for

him, he denies ever having received a letter, a telephone call, or any other communication

from Wal-Mart about rescheduling his drug test.  (Harris Decl. ¶ 11.)  When Harris did not

reschedule the drug test or contact Wal-Mart to do so, his employment was terminated on

March 31, 2006.

Harris then commenced the instant action.  In his Complaint, he asserts two claims:

(i) his termination violated the DATWA, Minnesota Statutes sections 181.950-181.957

(Count 1); and (ii) he was terminated in retaliation for filing his workers' compensation

claim, in violation of Minnesota Statutes section 176.82 (Count 2).  Wal-Mart now moves

for summary judgment on both claims.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477

---

[3] Wal-Mart originally asserted in an Interrogatory answer that Harris had answered one of its telephone calls but immediately hung up upon learning who was calling; it also asserted that Harris refused delivery of Wal-Mart's certified letter.  (Lander Decl. Ex. 7 at 6.)  Wal-Mart later amended its answer to assert only that it "attempted to reach Plaintiff by telephone several times to reschedule his drug and alcohol test.  Wal-Mart also sent Plaintiff certified and non-certified letters requesting that he submit to a drug and alcohol test.  Plaintiff never complied or responded to Wal-Mart's requests."  (Id. Ex. 8 at 3.)

U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material

facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't

of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the

evidence, and the inferences that may be reasonably drawn from it, in the light most

favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721,

723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir.

1997). The nonmoving party may not rest on mere allegations or denials, but must show

through the presentation of admissible evidence that specific facts exist creating a genuine

issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v.

County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

I.     **Genuine issues of material fact preclude summary judgment on the DATWA claim.**

The DATWA permits employers to test employees for drugs under certain

circumstances. In relevant part, the DATWA provides that "an employer may . . . require an

employee to undergo drug and alcohol testing if the employer has a reasonable suspicion

that the employee has sustained a personal injury." Minn. Stat. § 181.951, subd. 5(3).

However, an employer cannot require an employee to undergo drug or alcohol testing "on

an arbitrary and capricious basis." Id., subd. 1(c).

Here, Harris argues that it was arbitrary and capricious for Wal-Mart to require him

to take a drug test because (i) a drug test 64 days after an injury is incurred is arbitrary and

capricious in all circumstances, since the test cannot reveal whether the employee was

under the influence of drugs or alcohol on the date of the injury,[4] and (ii) Wal-Mart violated

its own drug-testing policy by demanding a drug test 64 days after his injury, because the

policy requires a drug test to occur "immediately, or as soon as practical" after an accident.

(See Mem. in Opp'n at 18-23.)  While the former argument fails, the latter argument raises

a genuine issue of material fact that cannot be resolved on summary judgment because the

parties dispute what date Harris first reported his injury.

**A.      Requiring an employee to undergo a drug test 64 days after an injury
is not arbitrary and capricious *per se*.**

Harris first argues that a drug test administered 64 days after an injury must be

arbitrary and capricious because the test "would . . . not . . . detect[] the presence of drugs in

[the employee's] system at the time of injury."  According to Harris, to allow an employer

to test for drugs when the test "will tell [the employer] absolutely nothing about the

employee's condition at the time of the work accident is clearly arbitrary and capricious."

(Mem. in Opp'n at 19.)  The Court might be inclined to agree with Harris if the record here

supported this argument, but it does not.

The evidence in the record indicates that certain drugs are indeed detectable more

than two months after they are used.  Glynda Caldwell, Wal-Mart's personnel manager,

testified at her deposition that marijuana is one such drug, depending on how much of it had

---

[4] There are 64 days between January 25, 2006, the date Harris purportedly was injured, and
March 26, 2006, the date Wal-Mart demanded a drug test.

been used and the employee's frequency of use.  (Caldwell Dep. Tr. at 57-58.)  That

testimony is consistent with *Harris's* own expert, Anne Rummel Manley, who opined that a

drug may remain "in an individual's system for [two months if] the drug were being taken on

a routine basis."  (Lander Decl. Ex. 16.)[5]  See also Emily J. Sovell, Note, State v. Hanson:

Has the Exigent Circumstances Exception to the Warrant Requirement Swallowed the

Rule?, 45 S.D. L. Rev. 163, 175-76 (2000) ("Experts have found that marijuana can be

stored in an individual's fat tissue and detected for as long as seventy-seven days after

ingestion.").  Accordingly, the premise upon which Harris bases his argument – that a drug

test 64 days after an injury occurred could not "detect[] the presence of drugs in [the

employee's] system at the time of injury" (Mem. in Opp'n at 19) – is contradicted by the

record before the Court.

 Harris also argues that a drug test administered 64 days after an injury is arbitrary

and capricious because it cannot "pinpoint" when the employee actually used drugs.  (Id.)

But there is no evidence before the Court indicating that a post-injury drug test can

"pinpoint," to the precise moment, when a person used drugs.  For example, assume that an

employee had been injured on the job and his employer administered a drug test three hours

---

[5] This statement is in a September 14, 2007 letter from Manley to Harris's counsel. Immediately prior to the sentence quoted above, Manley states that "any type of drug analysis done on a urine sample collected approximately two months after an incident would have absolutely no scientific validity in determining if an individual had any type of drug in his/her system at the time of the incident itself." (Lander Decl. Ex. 16.)  Harris seizes on this sentence to argue that the drug test Wal-Mart requested here "would have yielded no valid information" upon which to conclude that Harris did (or did not) have drugs in his system on January 25, 2006, the date of his alleged injury.  (Mem. in Opp'n at 19.)  Yet, Harris ignores that Manley qualifies this statement in the very next sentence in her letter.

later.  A positive test result would only indicate that the employee had drugs in his system at the moment of the test; the Court has no evidence before it suggesting that such a test would (or could) indicate whether the employee had used drugs one minute before the injury or one minute after.  Accordingly, on the facts here, the most a positive test result can do is create an *inference* that the employee used drugs prior to the injury, an inference that may be strong or weak based on the amount of drugs in the employee's system and the length of time between the injury and the drug test.  While the inference that may be drawn from a positive drug test administered two months after an injury is certainly weaker than that of a positive drug test administered immediately after an injury has been sustained, the inference nevertheless exists; it is only the weight to which the inference is entitled that has changed.

Taken to its logical conclusion, Harris is arguing that *all* post-injury drug testing is improper, because a positive test result simply cannot indicate precisely when the employee used drugs.  The law does not support that argument.  See Minn. Stat. § 181.950, subd. 5(3) (drug testing permissible on reasonable suspicion that employee "has sustained a personal injury"; use of past tense clearly indicates that after-the-fact testing is permissible).

Accordingly, the Court concludes that it is not necessarily arbitrary and capricious to require an employee to undergo a drug test 64 days after sustaining a work-related injury.

**B.     There is a genuine issue as to whether Wal-Mart applied its drug-testing policy in an arbitrary and capricious manner in this case.**

Harris next argues that Wal-Mart violated its drug-testing policy when it demanded a drug test 64 days after his injury.  He claims that he notified Wal-Mart of his injury on January 25, 2006, but that Wal-Mart stood idly by until he appeared with his mother at the Apple Valley store on March 26, 2006, inquiring about workers' compensation; only then did Wal-Mart demand the drug test.  Wal-Mart's drug-testing policy, however, requires a drug test to be administered "immediately, or as soon as practical" after an injury is sustained.  Since Wal-Mart waited to seek a drug test for more than two months after Harris allegedly reported the injury, he asserts that Wal-Mart arbitrarily and capriciously applied its drug-testing policy to him, in violation of the DATWA.[6]

There is support for the argument that requiring an employee to take a drug test in violation of the terms of a drug-testing policy is "arbitrary and capricious" under the DATWA.  For example, in Kise v. Product Design & Engineering, Inc., the first Minnesota case discussing the arbitrary-and-capricious standard, the court held that an employer's request for a drug test was not arbitrary and capricious because the request was "not in conflict with its testing policy."  453 N.W.2d 561, 565-66 (Minn. Ct. App. 1990).

---

[6] The Court notes that Harris's employment was not terminated due to a positive drug-test result, but rather due to Harris's purported "refusal" to take the test.  In the Court's opinion, however, if the request to take the drug test was unlawful, then Harris's termination for refusing to take that test was equally unlawful.  See NewMech Cos., Inc. v. Youness, No. C6-00-2162, 2001 WL 1083933, at *3-4 (Minn. Ct. App. Sept. 18, 2001) (employee terminated for refusing to take drug test entitled to unemployment benefits; employee had not engaged in "employment misconduct" by refusing to take test where he reasonably believed that he was not subject to testing under DATWA).

Accordingly, the employer's termination of the plaintiff for refusing to submit to the test

was not unlawful.  Id.  By implication, then, a request that *does* conflict with a drug-testing

policy may be arbitrary and capricious, unless there is some reasonable explanation for the

conflict.  See also Sledge v. Minneapolis Pub. Hous. Auth., No. A04-2479, 2006 WL

463542, at *5 (Minn. Ct. App. Feb. 28, 2006) (rejecting argument that employer's drug test

was arbitrary and capricious because employer did not undertake pre-testing steps

inconsistent with drug-testing policy).

Moreover, cases in other contexts suggest that a drug test that violates an

employer's drug-testing policy satisfies the definition of arbitrary and capricious.  See,

e.g., United States v. Chromalloy Am. Corp., 158 F.3d 345, 353 (5th Cir. 1998)

(administrative-law case; noting that dictionary defines "arbitrary" as "based on random or

convenient selection or choice rather than by reason or nature" and "capricious" as, *inter*

*alia*, "marked by variation or irregularity; lacking a predictable pattern or law"); Pearson v.

Ind. High Sch. Athletic Ass'n, No. IP99-1857, 2000 WL 1030616, at *23 (S.D. Ind. Feb.

22, 2000) (evidence of inconsistent application of not-for-profit corporation's internal

rule would satisfy arbitrary-and-capricious standard); Vann v. Nat'l Rural Elec. Co-op Ass'n

Ret. & Sec. Program, 978 F. Supp. 1025, 1043 (M.D. Ala. 1997) (ERISA case;

"inconsistent application to similarly situated persons is evidence that a decision is

arbitrary and capricious").

In fact, Wal-Mart conceded at oral argument that *if* it had demanded a drug test in

violation of its drug-testing policy, then its actions were arbitrary and capricious.  (See also

Def. Mem. at 10 (arguing that its request for a drug test was not arbitrary and capricious because it "followed its policies and procedures").)  Nevertheless, Wal-Mart argues that it did nothing wrong in this case because its drug-testing policy requires all employees to take a drug test as soon as a work-related injury *is reported*, and Harris did not report his injury until March 26, 2006, when he came to the Apple Valley store with his mother.  (See Def. Mem. at 9 ("Plaintiff did not report [his] alleged injury until March 26, 2006.").)  Thus, Wal-Mart argues that its actions were not arbitrary and capricious because "[a]s soon as [it] received the report of a work-related accident allegedly causing [Harris] to sustain an injury, it requested [Harris] to submit to an alcohol and drug test."  (Id.)

　　　　Wal-Mart's argument, however, ignores a critical point:  there is a genuine issue as to whether Harris reported his accident on January 25, 2006 (as he claims) or on March 26, 2006 (as Wal-Mart claims).  Indeed, Wal-Mart conceded this point at oral argument.  And, there is ample evidence in the record from which a reasonable jury could conclude that Harris did, in fact, report his injury on January 25, 2006.  First, Harris has submitted a Declaration in which he affirmatively states that he reported his injury, both to his supervisor and to McNulty, immediately after it occurred.  (Harris Decl. ¶ 3.)  Wal-Mart has not proffered any evidence, such as an affidavit or deposition testimony from either of these individuals, contradicting Harris's statement.  Second, Harris has proffered documents corroborating his claim that he reported his injury to store personnel on the day it occurred.  For example, when he filled out his workers' compensation paperwork on March 26, 2006, Harris indicated that he had previously notified McNulty of his injury.

(Lander Decl. Ex. 3.)  Similarly, Harris has proffered a hand-written letter delivered to the Apple Valley store indicating that he advised McNulty of his injury before taking his leave of absence on February 3, 2006.  (Id. Ex. 2.)[7]

At bottom, when the facts are viewed in the light most favorable to Harris, a reasonable jury could conclude that he reported his injury on the date it occurred, January 25, 2006.  And, if a jury were to conclude that Wal-Mart waited more than two months after the injury was reported to demand that Harris submit to a drug test, then it could also reasonably conclude that Wal-Mart arbitrarily and capriciously applied its drug-testing policy.  Accordingly, the Court concludes that Wal-Mart is not entitled to summary judgment on Count 1.[8]

_____

[7] A not-so-subtle change from Wal-Mart's opening brief to its Reply laid bare Wal-Mart's awareness of a fact dispute concerning when Harris first reported his injury.  In its opening brief, Wal-Mart repeatedly argued that Harris "did not report [his] alleged injury until March 26, 2006."  (Def. Mem. at 9; accord id. at 5 (noting that "Plaintiff had not previously reported [his] alleged injury to Wal-Mart" when he appeared at the Apple Valley store with his mother on March 26, 2006).)  After Harris argued in his Opposition that he reported the injury on January 25, however, Wal-Mart argued for the first time in its Reply brief that Harris did not make "a first, *written* report of injury" until March 26, 2006.  (Reply at 7 (emphasis added); accord id. at 8 (discussing "Plaintiff's first, written report of injury on March 26, 2006"); id. at 9 ("by requesting that Plaintiff undergo drug testing the very day that it received a first, written report of injury, Wal-Mart acted reasonably and not in an arbitrary or capricious manner").)  Tellingly, there is no evidence in the record that any type of "written" reporting is required; Wal-Mart has proffered no evidence indicating that under its policies or procedures an employee reporting a workplace injury must do so in writing.  Wal-Mart's shift from "first report of injury" in its opening brief to "first *written* report of injury" in its Reply leaves it beyond doubt that Wal-Mart knows this issue is not ripe for plucking on summary judgment.

[8] In denying Wal-Mart's Motion as to Count 1, the Court in no way expresses an opinion on Harris's likelihood of success at trial on this claim or his ability to survive a motion for judgment as a matter of law after the presentation of his case.

**II.       The retaliation claim fails.**

Harris next alleges that he was terminated in retaliation for filing his workers'

compensation claim.[9]  Wal-Mart argues that it is entitled to summary judgment on this

claim because Harris cannot establish (1) a *prima facie* case of retaliation and (2) that its

reason for terminating him (his failure to submit to a drug test) was pretextual.  (Def. Mem.

at 11-16.)  Because the Court agrees with the latter argument, it need not address the

former.

Under Minnesota law, an employer may not discharge an employee for filing a

workers' compensation claim.  Minn. Stat. § 176.82, subd. 1.  When analyzing such a claim

for retaliatory discharge, the Court must employ the tripartite burden-shifting framework

articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Graham v. Special

Sch. Dist. No. 1, 472 N.W.2d 114, 119 n.7 (Minn. 1991).  Under McDonnell Douglas, an

employee must first establish a *prima facie* case of retaliation, which requires him to show

that he sought workers' compensation benefits, he was then discharged, and there is a causal

link between the two.  Once the employee has stated a *prima facie* case, the burden shifts to

his employer to articulate a legitimate reason for his discharge.  If the employer does so,

the employee must then proffer sufficient evidence to create a genuine issue that the

proffered reason for his discharge is a pretext for retaliation.  Id.; Neumann v. AT&T

Commc'ns, Inc., No. A04-355, 2004 WL 2050779, at *3 n.3 (Minn. Ct. App. Sept. 14,

---

[9] Harris devotes only the last two pages of his 31-page Opposition brief to this claim, and he
did not address it at oral argument.

2004).

Here, the Court assumes *arguendo* that Harris has stated a *prima facie* case of

retaliation. Wal-Mart has articulated a legitimate reason for terminating Harris's

employment, namely, that Harris failed to submit to a drug test.[10]  Accordingly, in order to

survive summary judgment, Harris must proffer evidence indicating that Wal-Mart's reason

for terminating his employment is merely a pretext for retaliation. He can do so either (1)

"indirectly," by showing that Wal-Mart's proffered reason for his termination is "unworthy

of credence," or (2) "directly," by showing that a retaliatory reason likely motivated Wal-

Mart's actions. Sigurdson v. Isanti County, 386 N.W.2d 715, 720 (Minn. 1986).

Harris has opted to take the "indirect" route, arguing that Wal-Mart's proffered

reason for his discharge is false. In support, he points to the date of his termination and the

letter Wal-Mart sent him requiring him to submit to a drug test within 24 hours, which was

mailed on March 29, 2006. He argues that the letter could not have been delivered before

March 30 and, hence, the 24-hour deadline for him to respond could not have expired until

March 31. Because he was fired on March 31, "before [Wal-Mart] could have determined

whether [he had] even received the letter and, more importantly, before 24 hours were up"

---

[10] It could be argued that this is not a "legitimate" reason because Wal-Mart's request for a
drug test was arbitrary and capricious under Minnesota law. (See supra at 9-13.). Harris has not
made that argument, however. Moreover, a "legitimate" reason in this context is an "explanation
unrelated to . . . seeking workers' compensation benefits." Benson v. Nw. Airlines, Inc., 561 N.W.2d
530, 539 (Minn. Ct. App. 1997). Wal-Mart's proffered reason – Harris's failure to take a drug test –
is indisputably unrelated to his workers' compensation claim, regardless of whether that proffered
reason may itself be unlawful.

(Mem. in Opp'n at 29), Harris argues that Wal-Mart must have already decided to terminate

his employment when it mailed the March 29 letter.  He argues, therefore, that "it can be

fairly inferred that [its] decision was . . . made in retaliation for seeking workers'

compensation benefits," since he had filed for workers' compensation on March 26, only

three days before Wal-Mart purportedly opted to fire him.  (Mem. in Opp'n at 28-29.)

 Although creative, Harris's argument is unpersuasive.  Simply put, he has failed to

offer any evidence indicating, or even suggesting, that Wal-Mart had already opted to

terminate his employment at the time it mailed the March 29 letter.  Indeed, even under the

timing argument set forth in Harris's brief and discussed above, Wal-Mart could have

provided Harris with 24 hours to comply with its demand for a drug test and still fired him

on March 31 without necessarily having made the decision to fire him at some earlier point

in time; there is no support for Harris's assertion that he was fired "before 24 hours were

up."[11]  Moreover, the evidence suggests that Wal-Mart opted to terminate Harris's

employment only *after* it received notice from the post office that Harris had refused to

accept the March 29 certified letter (even if that so-called "refusal" was based on a

misinterpretation of the reason that the letter was returned to Wal-Mart by the post office).

(See Lander Decl. Exs. 22, 25.)  Accordingly, Harris has failed to demonstrate that Wal-

Mart decided to terminate his employment before mailing the March 29 letter.  He has

therefore failed to show that its proffered reason for his discharge is "unworthy of

---

 [11] Neither party has indicated what time on March 31 Wal-Mart purportedly decided to
terminate Harris's employment.

credence."

Harris also has failed to demonstrate that a retaliatory reason likely motivated Wal-Mart's decision to terminate his employment. The only evidence Harris can point to linking his discharge and his workers' compensation claim is the close proximity in time between the two; this is simply not enough. See Back v. Danka Corp., 335 F.3d 790, 792 (8th Cir. 2003) (applying Minnesota law) (for purposes of *prima facie* case, employee's termination shortly after filing for workers' compensation benefits was "certainly some evidence of causation, but [was] *not sufficient standing alone*") (emphasis added); Wolhart v. Genuine Parts Co., Civ. No. 05-254, 2006 WL 839506, at *4-5 (D. Minn. Mar. 30, 2006) (Kyle, J.) (same).[12]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.       The Motion is **GRANTED** as to Harris's retaliation claim, and Count 2 is

**DISMISSED WITH PREJUDICE**; and

---

[12] Harris also points to a stray remark purportedly made by McNulty when he advised her of his injury on January 25, 2006: "Good luck getting workers' compensation benefits." This statement cannot reasonably be perceived as evidence of any animus on McNulty's part. Indeed, she simply could have been suggesting that it is hard for employees to obtain workers' compensation benefits or that such claims are difficult to prove. See Back, 335 F.3d at 792 (notes taken by plaintiff during telephone call stating "terminated over phone + you're on w/c-we're having cutbacks + you're one of the cutbacks" insufficient to support retaliatory-discharge claim, because notes could reasonably be viewed to suggest things other than animus by supervisor).

2.      The Motion is **DENIED** as to Harris's claim under the Minnesota Drug and

Alcohol Testing in the Workplace Act (Count 1).

Dated: November  8 , 2007                                      s/Richard H. Kyle
                                                              RICHARD H. KYLE
                                                              United States District Judge